Johnson, O. J.
1. The objection raised to the amendment of the petition in error by striking out the name of Forman Waite, and, adding that of Peter F. Berdan as a co-plain tiff,: is not well taken. He was a co-plaintiff below, as one of the firm of Seer, Berdan & Go., who now seek a reversal. It is not denied but that his name was omitted by mistake. If the district court, or this court, cannot allow such a mistake to be corrected, in furtherance of justice, our reform system of pleading, in respect to its supposed superiority over the old system, is a delusion. But while this power to amend is conceded, if *227 exercised in time, yet on the authority of Smithers v. Rainey, 14 Ohio St. 287, it is claimed it cannot be exercised after the time has elapsed for filing a petition in error, which was then, three years. The facts of that case are unlike the present, and we are not inclined to extend the principle there stated beyond the facts there stated. That was the case of a joint judgment against four defendants, three of whom were joint makers and one an indorser of a promissory note. Smith, one of the joint makers, on his ovm account, filed a petition in error to reverse, without joining his co-defendants, or making them defendants in error. After the three years had elapsed for filing a petition in error, objection was made to a hearing for want of these parties, and leave was given to bring them in. This was done by uniting one of them as a co-plaintiff, and the other two, whóse consent could not be obtained, as defendants. One of these was the indorser, who, not desiring a reversal of the judgment against him, plead the three years limitation, and moved that the petition be dismissed without a hearing, and thereby leave the judgment below to stand. The plaintiffs below joined in this motion. The court sustained the motion and held, that all defendants to a joint judgment-are necessary parties to a petition filed by one of them to review it, either as plaintiffs, or as defendants, and if not so made in three years, the revising court had no jurisdiction of the subject-matter. It is quite true that all the defendants to a joint judgment are necessary parties to a petition to reverse it, as the judgment is an entirety.; but the second branch of the proposition, that unless they are so made within the time limited for prosecuting error, the court has no jurisdiction over the subject-matter, may well be doubted, as it was in Bradford v. Andrews, 20 Ohio St. 208. Be this as it may, that case is so different from the one at bar that we are not embarrassed by it. There, one of four judgment debtors alone sought a reversal, neglecting for three years to bring the others in; here, all the members of a partnership sought a reversal, but by mistake the name of one was omitted. There, there was no intention to make all, parties, while here there was. There, two of the four joint defendants objected to a reversal of the judgment *228 against them, while two favored it — a tie vote, in which case, after such long delay, the court might well refuse to hear the case; while here the omitted party unites with the others asking a correction, of the mistake and a reversal. There, the petition was filed by one in Ms own behalf, while here, it was filed in behalf of all who were members of the partnership and plaintiffs in the case.
The scope and legal effect of -that case is, to hold that all defendants to a joint judgment are necessary parties to an action to reverse it, either as plaintiffs, or, if their consent cannot be obtained -for that purpose, then as defendants ; but if the consent of one or -more cannot be had, they must be made defendants within three years, otherwise upon their objection the case will be dismissed. In short, when co-defendants to a joint judgment are not agreed in asking a reversal, those desiring it must within the time bring in their unwilling associates, or the court will decline to hear the case. The right of each joint defendant to seek a reversal of a joint judgment is thus conceded, but this right cannot be exercised after three years when his- co-defendants are unwilling. The alternative was presented, as there could be no severance, of reversing a joint judgment where some were opposed to such reversal, or of allowing it to stand against all. On account of the delay of the one desiring a reversal, the court declined to compel, the unwilling ones to be brought in and accept a judgment they did not seek after the three years had elapsed.
Jones v. Marsh, 30 Ohio St. 20, also -relied on, simply holds, that all defendants are necessary parties to a proceeding to reverse. In neither case -was the power of the court to correct mistakes involved. In 'neither was the right of a co-defendant to such a judgment, after three years, whose name had been omitted by mistake, to become a co-plaintiff in error, involved or considered.
Where, as in the present case, it is manifest that the plaintiffs in error are acting for all, the court may correct such a mistake, in furtherance of justice, after three years, and allow other necessary parties to be brought in, even without their consent, and while it may not compel unwilling parties to come *229 in after three years, where there was no mterition to make them sueh, yet when- there is, the court has jurisdiction over the subject-matter and may allow them to become parties seeking a reversal. (In this, I speak for myself only, and not-for my brethren.) Indeed, I should be willing, as at present advised, to hold that the power of amendment in this- respect, notwithstanding the statute of limitations, is as ample in cases of error as in other civil actions, and therefore the rule that if' all are so united in interest as that one is saved from the statute all are saved applies-. This -is the principle settled in Wilkins v. Phillips, 3 Ohio, 49, which has been cited with approval ill several cases sinee. Several' plaintiffs in error, claiming as heirs, sued out a writ of error after the time' for doing so had elapsed. One of the heirs was an infant, and thereby within the saving clause of the- statute. It was held that the aetion" was saved as to all. So, in a suit to contest a will, Meese v. Keefe, 10 Ohio, 362; Bradford v. Andrews 20 Ohio St. 208.
In the last case, Smithers v. Barney was- relied on to defeat a contest on a cross-petition filed within the . proper time against unwilling heirs brought in after. It is like the present case in principle. It was held that by filing the cross-petition in time the court acquired such jurisdiction over the subject-matter so as to save the case as to all who might ultimately be made parties by an order of the court. The same principle applies to Bills of Review under the former Chancery Practice. Heirs of Massie v. Mathews, 12 Ohio St. 351; Sturgess v. Longworth, 1 Ohio St. 544.
The reason for this rule,- as explained in Moore v. Armstrong, 10 Ohio, 17, is, that as the judgment is an entirety, and all must recover or none, there can be no severance; and therefore the casé is saved as to all rather than one shall loose his right.
2. What right did the plaintiffs- acquire to the amount owing on these negotiable notes by the garnishment of tlie makers ? The attachment operated as a seizure' of these debts, if at all, from the time of service of process on the garnishees, not from the time of the order of the justice, nor from the maturity of the notes, nor when final judgment should be *230 rendered against the garnishees. At that time they owed the defendant certain sums payable at a future day, evidenced by negotiable notes payable to the order of defendant.
By the statute, all debts, whether due or not, and without regard to the form of the evidence of them, are by express terms subject to garnishment. This includes debts on. negotiable instruments, the property of defendant.
Another statute makes contracts in a certain form negotiable, and vests- the title and right to the proceeds, free from all equities and defenses in bona fide holders, who, before due, have acquired the same in the usual course of business. All other holders are not thus protected. The terms of the contract as imprinted upon it by this statute cannot be changed by the proceedings in attachment. The garnishee is liable by those terms to such a holder, irrespective of all claims the maker or others may have. But for the negotiable quality of these contracts, the attachment. would have bound all subsequent assignees or indorsers, as well as defendants without regard to notice.' Drake on Att. 5 ed. § 575.
Owing to their being commercial paper, the statute protects those who can establish their bona fide ownership before due. Such holders are specially pi’otected, and their rights are paramount to all claims of others, whether by garnishee process or otherwise.
"We deduce, from principle and the best considered cases, the following propositions, which are controlling in the case at bar.
1. That, all debts, whether due or not, and whether evidenced by negotiable instruments or not, the property of a defendant in attachment, are subject to garnishment.
2. That, by reason of the commercial quality of negotiable instruments, that which was a debt to the defendant may become the debt to another; and if such other has acquired his title before.maturity, under such circumstances that he is a bona fide holder, the debt at maturity is not one to defendant in attachment, and therefore cannot be appropriated to plaintiff’s judgment. - •
3. That no judgment charging the garnishee can be ren *231 dered in any case of a debt not due until after it becomes due, and not .then as to negotiable paper, if it appears that the garnishee is liable to a tona fide holder under our statute, relating to negotiable instruments.
4. A garnishee is entitled to his day in court, and tp. have all the rights accorded to a defendant. No judgment should be rendered against him, as the maker of a negotiable instrument, that will not be adequate protéction to him against the possible rights of third persons. Until maturity there is no cause of action against him upon which he can be charged as garnishee by a judgment or final order.
This brings us to the important features of the attachment proceedings before justices of the peace in this State. ' The garnishee is not, as in many of the States a party to the attachment action. He has no day in court. The order made by the justice is not an adjudication between the plaintiff and the garnishee. It does not determine, their ultimate rights. In legal effect it is only an assignment of the claim from the debtor to the creditor in attachment. If the garnishee fails to appear and answer, or if his answer is not satisfactory, or if he does not comply with the order, he is liable to an action, “ as in other cases.” In such an action he is a party entitled to his day in court, and the final determination of that action is a judgment either charging or discharging him. If that is against him, he is charged as garnishee within the meaning of that term as used in the text books and decisions.
As a logical sequence, it follows that the order made- by the justice in this case was not a judgment or final order charging the garnishee. In those states, where the garnishee is- a party in the attachment suit, such a judgment is rendered in that action, and is enforced by execution ; but our statute requires that there should bean independent action brought,.before the garnishee can be charged.
It follows that the order of the justice does not purport- to-charge the maker of commercial paper before due, .in the Legal sense of that term. This statutory order simply authorizes-the plaintiff in attachment to take the place of the defendant,, and sue in his own name, if the order is not complied, with.. *232 The attaching creditor does not acquire a more summary remedy for the collection of his debt, by such an order, than the defendant had. Rice v. Whitney, 12 Ohio St. 358 ; Board of Education v. Scoville, 13 Kan. 32; A. de P. R. R. Co. v. Hopkins, 91 U. S. 11
It is a mistake to say that the liability of the garnishee is fixed by the order of the justice of the peace. Its office is to give the plaintiff a right of action where the answer discloses an indebtedness to the defendant. That liability is not fixed until a judgment is rendered against him in such action. The garnishment binds him for any debt that on such final adjudication may be found due from him to defendant, “ at or after service of the order of attachment and notice upon him,” and not from the date of the order of the justice. Hence the phrase found in Drake on Attachment, and in numerous decisions, where speaking of the power of the court to charge a garnishee where the debt is assigned, “ at the time of the rendition of the judgment against the garnishee,” means, under our system, at the time of final judgment in the action authorized • by the statute, and not at the time of the examination of the garnishee, as learned counsel contend. In case of all debts not yet due, no such action can be commenced until their maturity. If the instrument is negotiable and not due, it is liable to become the property of a bona fide holder before maturity. By the law merchant, his right is paramount, and the attachment ceases to be available. If the plaintiff, after maturity, brings his action for non-compliance with the order, and it then appears that by reason of the negotiability of the paper the title and property thereof has been acquired by such a holder, the plaintiff cannot recover; otherwise the garnishee must pay twice. The statute making such paper negotiable extends this immunity to bona fide holders only. As to the defendant in attachment, and all claiming through him, after service of process, with actual notice of the proceedings, the attachment is binding.
Witter, Robinson and Wood, are not bona fide holders of these notes. They took them with actual notice of these proceedings, not in the usual course of business, but to be *233 applied, when collected, in satisfaction of a pre-existing debt. The transfer of these notes, pending the attachment, was a fraudulent act by defendant. His object obviously was to defeat the collection of a judgment against him. Witter, Robinson and Wood, well knowing the facts aided him, in this act. They are in no better position than the defendant would •be if in their place. In their hands these notes are subject to the attachment, and a judgment may be rendered against the garnishees charging them to pay as ordered by the justice. Culver v. Parish, 21 Conn. 408; Drake on Att., Chapter XXX.
In support of this conclusion, the following ease's are in point.
Stone v. Elliott, 11 Ohio St. 252, was an action by a bona fide holder of a negotiable instrument against the maker.
The defense was, that,-in a suit in- chancery by a judgment creditor against his debtor, to which the maker was a party, he was decreed to pay the amount, when due, in satisfaction of the complainant’s judgment, and had done so. Elliott, the plaintiff, had acquired the note pending this litigation, but without actual notice of these proceedings. It was held, that constmctive notice of the suit in chancery by the mere lis pendens, was not sufficient to defeat the right of a bona fide holder, acquired before maturity for value, and that such a decree made before the note was due, if this fact was disclosed by the answer, was erroneous.
It is said, the chancellor should have suspended proceedings until the maturity of the paper, and the possible rights of third parties were ascertained. If, as is here claimed, the court had no jurisdiction to reach such paper, the statement that the court should have suspended a final decree until the possible rights of third persons could be ascertained, has no significance. The error of the decree was that it- was made before maturity of the paper, and without protecting the maker from liability to a bona fide holder.
In Howe v. Harkness, 4 Ohio St. 449, the same rule was applied, where the attempt was made to charge a garnishee as maker of such a note, although it had beefi transferred be *234 fore due to such a holder. It was held, that the right of the holder was paramount, and the garnishee was not liable in attachment. This defense was made in the statutory action against the garnishee, and not in the attachment proceeding itself.
These decisions are without point or meaning if such paper is not subject to attachment. They rest on the sole ground that the title and property of the note acquired by a bona fide holder rendered the proceedings to appropriate the amount unavailing.
In Smith v. Blatchford, 2 Ind. 184, it was held that the maker of such paper cannot be charged so as to defeat the rights of a bona fide endorsee.
In Junction R. R. Co. v. Cleneay, 13 Ind. 161, held that before & judgment can be rendered against the garnishee, the plaintiff must show that at the time of maturity the note remained in the hands of the defendant, or a fraudulent assignee or was not the property of a bona fide holder. See, also, Cleneay v. Junction R. R. Co., 26 Ind. 375 ; King v. Vance, 46 Ind. 246.
Kieffer v. Elder, 18 Pa. St. 388, which is quoted with approval in Stone v. Elliott, holds, under a statute substantially like ours in this respect, that commercial paper is subject to attachment before due, but that the process is rendered unavailable as against a bona fide holder for value.
In Day v. Zimmerman, 68 Pa. St. 72, it is said : “ The law is well settled that a promissory note is liable to attachment before maturity. Though not due, it is a debt within the meaning of the statute, and therefore, as between the payee and the attaching creditor, it is bound by the service of the attachment on the maker; and if, after being attached, it remains in the hands of the payee until maturiUj, it is bound by the attachment as against all persons into whose hands it may thereafter come. But the attachment is una/oailing as. against a bona fide holder, dbc.”
3. In conclusion, it is claimed :
That no cause for relief in equity is made.: (1.) Because *235 the statutory remedy by action is exclusive; and, (2.) Because no case is made for equitable relief.
.(1.) The statutory action given is against the garnishee for a failure to appear and answer, .or because his answer is not satisfactory, or for non-compliance with the order to pay.
This is not an action of either kind. True, the garnishees are proper parties, but the real defendants are Witter, Robinson and Wood. It was brought before the maturity of the notes, to enjoin their falling into the hands of a bona fide holder. It may be that as against the garnishees alone the statutory remedy is exclusive, yet if there is a cause of action against the holders of these notes, plaintiffs may have the benefit of it.
The garnishees appear and make no resistance, but claim the protection of the court against the possible rights of third persons. As the notes were due before final judgment it was within the. power, and was the duty, of the court to grant this.
(2.) Has the court power to grant to the plaintiffs equitable relief? They are, as against Witter, Robinson and Wood, the real owners of these notes. The latter hold the legal title, but are not bona fide holders for value. They stand in the shoes of defendant in attachment. Against them the plaintiffs had no action at law. The right of plaintiffs would be defeated if the notes were negotiated to a bona fide holder. While equity might not aid a plaintiff in attachment against the defendant or the garnishee until all legal remedies are exhausted, yet, as against Witter, Robinson and Wood, the only remedy the plaintiffs hadnvas equitable.
Since the ease of Hood v. Aston, 2 Russ. 412, it is regarded as settled that equity will enjoin the wrongful or fraudulent holder of negotiable paper before due from negotiating the same. That was the case of the wrongful acceptance of a bill of exchange in the partnership name by a partner in payment of his individual debt, which the firm sought to enjoin the holder from negotiating. Lord Eldon said that from' the danger of its passing to a bona fide holder the plaintiffs .have a right to be protected.
Chief Justice Marshall says : “ A court will always inter- *236 ' pose to prevent a transfer of a specific article which, if transferred, will be lost to the owner.” Again: “ The holder of negotiable securities indorsed in the usual manner, if he has acquired them fraudulently, will be enjoined from negotiating them, because, if negotiated, the maker or indorser must pay them.” Osborn v. Bank of U. S., 9 Wheat. 845; Delafield v. Illinois, 26 Wend. 192; Hamilton v. Cummings, 1 John. Ck. 517; Clayton v. Lyle, 2 Jones Eq. 188; Hilliard on Inj. chap. XXX.; 2 Story Eq. Jur. §§ 907, 906 and 955; Martin v. Graves, 5 Allen, 601. In the ease last cited, the rule is thus stated: “ Whenever a deed or other instrument exists, which niay be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree which justice and the rights of the parties may require.”
This sound principle, so tersely expressed, is applicable to the facts of this case.
The demurrer to the petition should therefore have been overruled.

Judgment accordingly.